UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GINA LUCARELLI,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. C23-0334-SKV

ORDER AFFIRMING THE
COMMISSIONER'S DECISION

       Plaintiff seeks review of the denial of her application for Disability Insurance Benefits (DIB).  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

       Plaintiff was born in 1980, has at least a high school education, and has worked as a receptionist, waitress, and cook.  AR 41, 65–66, 104.  Plaintiff was last gainfully employed in January 2018.  AR 104, 216.

       On June 8, 2020, Plaintiff applied for benefits, alleging disability as of October 1, 2018. AR 73.  Plaintiff's applications were denied initially and on reconsideration, AR 111–123, and

Plaintiff requested a hearing, AR 124.  After the ALJ conducted a hearing on May 26, 2022, the ALJ issued a decision finding Plaintiff not disabled.  AR 12–32.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**:  Plaintiff did not engage in substantial gainful activity from October 1, 2018, the alleged onset date, through September 30, 2020, the date last insured.

**Step two**:  Through the date last insured, Plaintiff had the following severe impairments: steroid-induced Cushing's Syndrome, anxiety disorder, depressive disorder, and post-traumatic stress disorder (PTSD).

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity**:  Through the date last insured, Plaintiff could perform sedentary work as defined by 20 CFR 404.1567(a) except she could remember, understand, and carry out simple and routine instructions and tasks consistent with the learning and training requirements of SVP level 1 or 2 jobs.  She could have frequent contact with the public, co-workers, and supervisors.  She could frequently handle.  She could occasionally stoop.  She could not crouch, crawl, or kneel, and could not climb ramps, stairs, ropes, ladders, or scaffolds. She could not work at heights or in proximity to hazards. She had to avoid concentrated exposure to temperature extremes, chemicals, dust, fumes, and gases.

**Step four**:  Through the date last insured, Plaintiff was unable to perform past relevant work.

**Step five**:  As there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, Plaintiff was not disabled.

AR 18–32.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1–6.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 1.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P., App. 1.

1

**LEGAL STANDARDS**

2      Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3   security benefits when the ALJ's findings are based on harmful legal error or not supported by

4   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.

5   2005). As a general principle, an ALJ's error may be deemed harmless where it is

6   "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104,

7   1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to

8   determine whether the error alters the outcome of the case." *Id*.

9      Substantial evidence is "more than a mere scintilla. It means - and means only - such

10   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

11   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d

12   747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving

13   conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v.*

14   *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record

15   as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

16   Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

17   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

18   must be upheld. *Id*.

19

**DISCUSSION**

20      Plaintiff argues the ALJ erred by (1) failing to provide clear and convincing reasons

21   supported by substantial evidence for rejecting Plaintiff's testimony, and (2) failing to provide

22   legally sufficient reasons supported by substantial evidence for finding the opinions of treating

23   endocrinologist, Dr. Fran Broyles, M.D., and consultative examining psychologist, Dr. Philip

1    Gibson, Ph.D., unpersuasive.  Dkt. 8 at 1.  The Commissioner argues the ALJ's decision is free

2    of harmful legal error, supported by substantial evidence, and should be affirmed.  Dkt. 14.

3    **A.      The ALJ Did Not Harmfully Err in Rejecting Plaintiff's Testimony**

4         The ALJ discounted Plaintiff's testimony, finding that her statements concerning the

5    intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the

6    longitudinal record, and that her symptoms were largely due to her decision to continue using

7    high doses of steroids against medical advice.  AR 19–20, 24.  Plaintiff contends this was in

8    error, arguing the ALJ's determination that she was not compliant with treatment

9    recommendations to stop using steroids is an oversimplification of the record, and that the ALJ's

10   conclusion that her physical and mental presentation were largely unremarkable is not supported

11   by substantial evidence.  Dkt. 8 at 14–17.

12        Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

13   discount a claimant's testimony.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014).

14        In challenging the ALJ's findings, Plaintiff details her extensive history with steroid use

15   and her attempts to wean off of the medication.  Dkt. 8 at 14–17.  She argues she first started

16   taking steroids on the recommendation of a doctor and that she tapered her use in accordance

17   with medical advice.  *Id.*  She further argues that because tapering causes severely debilitating

18   symptoms and can be fatal if done too quickly, her ability to successfully wean off of the

19   medication required her to continue using it.  *Id.*; Dkt. 15 at 5–6.

20        As noted by the ALJ, however, the record reflects numerous instances where Plaintiff

21   either resumed use of steroids against medical advice or continued their use at higher doses than

recommended.  *See* AR 19 (citing 427, 452, 466, 1050–51, 1054–55, 1065–66, 1070).[3]  An

"'unexplained, or inadequately explained, failure . . . to follow a prescribed course of treatment'"

is a proper reason to reject a plaintiff's testimony.  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th

Cir. 2012) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)).  By arguing

only that she followed doctor advice when tapering off of steroids, Dkt. 15 at 5–7, Plaintiff fails

to acknowledge or explain the evidence indicating her continued use in greater quantities than

recommended.  The ALJ properly considered this failure when assessing Plaintiff's testimony.

Moreover, the ALJ cited numerous instances in which the record indicates that, following

an initial bout of feeling poorly, Plaintiff's symptoms on the whole improved after her reduction

in or cessation of the use of steroids.  AR 19, 24 (citing AR 529, 531–32, 1100–01, 1118, 1122,

1125).[4]  This indicates Plaintiff's condition was amendable to treatment.  "Impairments that can

be controlled effectively with medication are not disabling for the purpose of determining

eligibility for [disability] benefits."  *Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir.

2006); *see also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (noting that an ALJ may

consider whether treatment produced a fair response or control of pain which was satisfactory).

---

[3] *See also, e.g.*, AR 545 (acknowledging Plaintiff took a "stress dose of 100mg of IM hydrocortisone tonight"); 552 (Plaintiff took steroids in hospital without first consulting medical staff), 1020 (noting Plaintiff's decision to start using steroids again after successful taper), 1053 (recognizing Plaintiff's decision to increase steroid dose), 1057–58 (recognizing Plaintiff's decision to start using steroids again after successful taper), 1084 (same), 1145 (recognizing Plaintiff's lack of attempt to taper recently and acknowledging her prior success at tapering), 1428 (noting Plaintiff's decision to increase steroid dose).

[4] *See also, e.g.*, AR 1020 (noting Plaintiff's symptoms abated when she stopped using steroids and that she was "quite active doing exercise and walking . . ."); 1050–51 (connecting steroid use to Plaintiff's symptoms); 1055 (same); 1057–58 (noting Plaintiff's conclusion that decreasing steroids improved her mood and that she was "generally cheerful"); 1159 (noting Plaintiff's ability to do her usual daily activities on decreased dose of steroids and improvement in her anxiety); 1514 (recognizing Plaintiff only "crashing" after initial reduction in steroid dose and indicating she was "more functional the lower she gets, less days on bed, less fatigue. More ADLs").

Plaintiff's contention that she experienced no improvement in symptoms when she tapered her steroid use, Dkt. 8 at 14–17; Dkt. 15 at 6–7, is not supported by the record.

Plaintiff challenges the ALJ's conclusion that her testimony was not entirely consistent with the longitudinal record and that outside of her weeklong hospitalization in May 2020, most records reflect a largely unremarkable presentation by Plaintiff. Dkt. 8 at 17. Plaintiff argues the ALJ failed to identify which of her testimony was not credible and which evidence undermines her complaints. Dkt. 15 at 8. She further argues the ALJ incorrectly determined that her presentation was largely unremarkable, citing instances in which she presented as anxious and distracted, restless and fidgeting, in distress, thin, tired, and shaking. Dkt. 8 at 17. Per Plaintiff, these noted abnormalities are consistent with her complaints that she would have trouble being "upright" for eight hours a day, on bad days was unable to get out of bed, and would have trouble with reliability at work due to fatigue and confusion. Dkt. 15 at 7–8. Finally, Plaintiff argues the ALJ erred in relying on her normal neurological and musculoskeletal exam findings when discounting her testimony, contending they have no bearing on her disabling medical conditions. Dkt. 8 at 17.

The ALJ also acknowledged the existence of intermittent abnormal findings in the record. AR 25–26 (citing instances where Plaintiff presented as anxious, distracted, or disengaged). However, he found that Plaintiff's anxious affect was at least partly due to her misuse of steroid medication, AR 25–26 (citing AR 438, 028),[5] and that, in spite of the existence of some notes indicating abnormal findings, most notes showed that Plaintiff presented as "alert and oriented; in no acute distress and with no significant abnormalities in affect, concentration, memory, or

---

[5] *See also, e.g.*, AR 466 (expressing concern over anxiety and mood issues related to Plaintiff's use of high-dose steroids; noting Plaintiff was potentially experiencing symptomatology related to high-dose steroid use); 525 (noting "[s]teroid-induced psychosis with delusions and severe anxiety"); 1050–51 (connecting Plaintiff's anxiety and other symptoms to her high-dose steroid use); 1055 (same).

1    speech." AR 26 (citing AR 545, 549, 563, 569, 586–89, 600–01, 603, 611–14, 624–29, 630–

2    636, 638–39, 648–50, 988–92, 1021, 1127, 1531, 1537, 1581, 1605, 1630).  The ALJ further

3    highlighted that Plaintiff's presentation was normal or mostly normal even when she reported

4    extreme symptoms, such as the "wors[t] headache of her life" and "'adrenal crises' with

5    dizziness, weakness, vomiting, and fatigue."  AR 25 (citing AR 563, 597–603, 630–36, 648–50).

6    *See also* AR 26 (citing AR 983–87) (noting that Plaintiff presented as "anxious and distracted,"

7    but that "her concentration, persistence, and pace were within normal limits; she required no

8    redirection.  She was cooperative, and had normal grooming, speech, and orientation.").  These

9    findings, supported by substantial evidence, adequately identify which of Plaintiff's testimony

10    the ALJ found not credible and what evidence undermined her complaints.  Further, contrary to

11    Plaintiff's contentions, her normal neurological exam findings—specifically, findings of normal

12    affect and cognition; alertness; and lack of distress— are relevant to Plaintiff's contention that

13    she suffered from debilitating anxiety, exhaustion, confusion, and lack of attention.[6]  To the

14    extent the ALJ's consideration of Plaintiff's musculoskeletal exam findings was in error, this

15    error was harmless.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

16    2008).

17        Plaintiff challenges the ALJ's finding that the evidence is not consistent with Plaintiff's

18    allegations of fatigue, anxiety, and cognitive defects because more often than not, she discussed

19    physical, and not mental, ailments with her therapist.  Dkt. 8 at 17.  Plaintiff argues her failure to

20    discuss such symptoms with her therapist does not change the fact that the record is replete with

21

22    ---

[6] The Court notes that the record to which the ALJ cited to evidence normal neurological findings
contains, for example, the following: "Neurological: She is alert and oriented to person, place, and time . .
23    . [,]" AR 589; "Neuro: alert and oriented X 3, normal strength . . . [,]" AR 627; "Neurological: Alert and
awake.  Normal speech[,]" AR 634; "CNS STATUS: The patient is awake, alert and oriented to person,
place and time.  Receptive and expressive speech functions are normal.  Cognition is linear and affect is
appropriate for the occasion[,]" AR 1021; "Neurological: Alert and oriented[,]" AR 1127.

1    evidence of her discussing them with other providers.  *Id.*  It may be true that Plaintiff discussed

2    these symptoms with other medical providers; however, the ALJ concluded that, in spite of her

3    allegations, the objective medical evidence largely indicated a normal presentation by Plaintiff.

4    AR 25–26.  As previously discussed, this conclusion was supported by substantial evidence.

5         Plaintiff contends a claimant's testimony cannot be rejected solely on the basis that it is

6    not supported by objective medical evidence.  Dkt. 8 at 17 (citing *Orteza v. Shalala*, 50 F.3d 748,

7    749–50 (9th Cir. 1995)).  It is true that "an ALJ cannot insist on clear medical evidence to

8    support each part of a claimant's subjective pain testimony when there is no objective testimony

9    evincing otherwise"; however, "[w]hen objective medical evidence in the record is *inconsistent*

10   with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such

11   testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).  *See also*

12   *Jones v. Comm'r of Soc. Sec.*, No. 1:22-CV-00769-SAB, 2023 WL 346824, at *10–11 (E.D. Cal.

13   Jan. 20, 2023) (concluding that "the Ninth Circuit has provided that contradiction between the

14   claimant's testimony and the relevant medical evidence is a sufficient basis for an adverse

15   credibility finding.") (collecting cases); *Carmickle*, 533 F.3d at 1161 ("Contradiction with the

16   medical record is a sufficient basis for rejecting the claimant's subjective testimony." ).

17        Here, the ALJ found contradiction between the full extent of Plaintiff's alleged symptoms

18   and the objective medical evidence, and properly relied on this finding in discounting Plaintiff's

19   testimony.

20        **B.    The ALJ Did Not Harmfully Err in Assessing the Medical Opinion Evidence**

21        Plaintiff challenges the ALJ's assessment of the medical opinions of treating

22   endocrinologist, Dr. Fran Broyles, M.D., and consultative examining psychologist, Dr. Philip

23   Gibson, Ph.D.  The Court will address each in turn.

1          *1.     Legal Standards*

2          Under regulations applicable to this case, the ALJ is required to articulate the

3     persuasiveness of each medical opinion, specifically with respect to whether the opinions are

4     supported and consistent with the record.  20 C.F.R. § 404.1520c(a)-(c).  An ALJ's consistency

5     and supportability findings must be supported by substantial evidence.  *See Woods v. Kijakazi*,

6     32 F.4th 785, 792 (9th Cir. 2022).

7          *2.     Fran Broyles, M.D.*

8          Dr. Fran Broyles, Plaintiff's treating endocrinologist, issued two written opinions dated

9     November 10, 2021 and April 1, 2022, both of which opined that Plaintiff could not work full or

10    part-time because of frequent absences and an inability to complete even a partial day of work.

11    AR 1454, 1947.

12         The ALJ found Dr. Broyles's assessment unpersuasive, concluding it failed to reflect

13    specific functional restrictions and could not be interpreted in concrete functional terms because

14    the statement that Plaintiff was "disabled" and "[could not] work" was not a medical opinion,

15    and instead was a legal conclusion reserved to the Commissioner.  AR 29.  The ALJ further

16    determined that Dr. Broyles's opinion was poorly supported and inconsistent with the

17    longitudinal record because (1) Dr. Broyles predicated the opinion on the condition of adrenal

18    insufficiency, which had not been diagnosed; (2) even if adrenal insufficiency had been

19    established, the longitudinal record did not reflect symptoms consistent with Dr. Broyles's

20    assessment; and (3) the longitudinal record did not show that Plaintiff regularly missed,

21    cancelled, or rescheduled appointments, which was inconsistent with Dr. Broyles's conclusion

22    that Plaintiff would regularly miss work.  AR 29–30.

23

1    Plaintiff argues the ALJ's conclusions are not supported by substantial evidence.  First,

2    Plaintiff contends Dr. Broyles did not simply state that Plaintiff could not work; instead, Dr.

3    Broyles opined that Plaintiff could not keep a job because she would frequently be absent, which

4    Plaintiff alleges is a concrete limitation.  Dkt. 8 at 6.  Plaintiff further contends the ALJ erred in

5    rejecting Dr. Broyles's opinion as predicated on the condition of adrenal insufficiency because

6    this conclusion was factually incorrect; Dr. Broyles actually provided that while it was unclear

7    whether Plaintiff had adrenal insufficiency or iatrogenic adrenal insufficiency, it was clear that

8    she had one or the other, and that in either case, the symptoms were the same and "severely

9    disabling." *Id.*  Finally, Plaintiff argues the ALJ improperly discounted Dr. Broyles's opinion on

10   the ground that the record did not show that Plaintiff regularly missed, cancelled, or rescheduled

11   appointments, as a "person's ability to attend infrequent medical appointments does not

12   demonstrate that she can work [a] full eight hour workday five days a week." *Id.* at 10 (citing

13   cases).

14   The Court agrees with Plaintiff on all points; however, it finds the ALJ's errors harmless.

15   The ALJ ultimately concluded that Dr. Broyles's opinion was poorly supported and inconsistent

16   with the longitudinal record because most records did not reflect symptoms consistent with Dr.

17   Broyles's assessment, and instead indicated a largely unremarkable presentation by Plaintiff.  AR

18   29.[7]  As discussed above, this conclusion was supported by substantial evidence, and was a

19   sufficient basis on which to discount Dr. Broyles's opinion.

20

21   _____

22   [7] The ALJ also found generally persuasive the opinions of the DDS psychological consultants, Dr.
     Patricia Kraft, Ph.D., and Dr. John Gilbert, Ph.D., who concluded, among other things, that Plaintiff could
     maintain attendance and complete a normal workday and workweek.  AR 87–89, 103–105.  This lends
23   further support to the ALJ's decision to discount Dr. Broyles's opinion that Plaintiff could not work
     because of frequent absences. *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (a reviewing court
     looks to all pages of the decision when determining whether substantial evidence supports the decision).

1
                  *3.*      *Philip Gibson, Ph.D*

2
On January 16, 2021, at the request of the SSA, Dr. Philip Gibson conducted a

3
psychological examination of Plaintiff.  Dr. Gibson opined that Plaintiff would have difficulty

4
maintaining regular attendance and completing a normal workday/workweek without

5
interruptions from her psychiatric condition, and would have difficulty dealing with the usual

6
stress encountered in the workplace.  AR 984–87.

7
The ALJ found Dr. Gibson's opinion unpersuasive, concluding it was speculative, did not

8
articulate a specific level of vocational restriction, could not be interpreted in concrete functional

9
terms, and was poorly supported and inconsistent with the longitudinal record.  AR 27.  While

10
Dr. Gibson pointed to sleep difficulty, fatigue, and poor stress tolerance as rationale for his

11
assessment, the ALJ found that these symptoms were largely drawn from Plaintiff's own report,

12
which the ALJ found not entirely credible.  AR 27.  The ALJ further concluded that Dr. Gibson's

13
clinical findings did not reasonably reflect abnormalities to corroborate Plaintiff's reports and

14
that his opinion was internally inconsistent.  AR 27–28.  Finally, because Dr. Gibson saw

15
Plaintiff only once and reviewed no treatment notes, the ALJ concluded his opinion was of

16
limited probative value.  AR 27.

17
Plaintiff argues the ALJ improperly rejected Dr. Gibson's opinion as speculative and

18
based on Plaintiff's own reports, not only because the ALJ's credibility determination was not

19
sound, but because "the rule allowing an ALJ to reject opinions based on self-reports does not

20
apply in the same manner to opinions regarding mental illness" because psychiatric diagnoses

21
"will always depend in part on the patient's self-report, as well as on the clinician's observations

22
of the patient."  Dkt. 8 at 12 (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)).

23
Plaintiff contends that because Dr. Gibson's opinion was also based on his clinical interview and

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 11

1   the objective findings of his MSE, it could not have been speculative.  *Id.*  Finally, Plaintiff

2   argues the ALJ failed to properly explain how he concluded Dr. Gibson's opinion was

3   speculative.

4         But the ALJ did not just reject Dr. Gibson's opinion as "speculative"; he also rejected it

5   as poorly supported and inconsistent with the longitudinal record.  AR 27.  Moreover, while it is

6   true that an ALJ errs when she relies on a claimant's discredited self-reports to reject the

7   "objective measures" of a psychologist's evaluation, *Mona Faye C. v. Comm'r of Soc. Sec.*, 21-

8   cv-00140-DCN-REP, 2022 WL 16639331, at *6 (D. Idaho Aug. 22, 2022), *report and*

9   *recommendation adopted sub nom. Mona Faye C. v. Kijakazi*, 21-cv-00140-DCN-REP, 2022

10  WL 16635577 (D. Idaho Nov. 2, 2022) (citing *Buck*, 869 F.3d at 1049), here, the ALJ found that

11  Dr. Gibson's objective findings did not themselves reflect abnormalities to corroborate Plaintiff's

12  reports.  AR 27.  Plaintiff argues that Dr. Gibson's objective observations did support Plaintiff's

13  allegations, as well as Dr. Gibson's opinion.  But as the ALJ explained, while Dr. Gibson noted

14  that Plaintiff appeared "anxious and distracted," he found that "her concentration, persistence,

15  and pace were within normal limits; she required no redirection.  She was cooperative, and had

16  normal grooming, speech, and orientation.  She made mistakes in counting backward from 200

17  by sevens, but had sufficient concentration to follow a three-step task and spell 'world'

18  backward."  AR 26 (citing AR 984–87).  This sufficiently explains the ALJ's conclusion that Dr.

19  Gibson's objective observations were not consistent with the symptoms and severe functional

20  limitations alleged by Plaintiff.

21        Plaintiff avers that the ALJ erred in rejecting Dr. Gibson's opinion as "internally

22  inconsistent."  Dkt. 8 at 13.  The ALJ concluded that Dr. Gibson's finding that Plaintiff would

23  have difficulty maintaining regular attendance and completing a normal workday/workweek, and

1    would have difficulty dealing with the usual stress of the workplace, was internally inconsistent

2    with his findings that Plaintiff "had no limitation in the ability to perform detailed and complex

3    tasks; accept instructions from supervisors; interact with coworkers and the public; and perform

4    work activities on a consistent basis without special or additional instruction." AR 28.  Per

5    Plaintiff, there was no internal inconsistency in these findings because the opinions the ALJ

6    found inconsistent were separate and distinct from each other.  Dkt. 8 at 13.  Contrary to

7    Plaintiff's contentions, however, a finding that Plaintiff would have difficulty dealing with the

8    usual stress in the workplace is inconsistent with a finding that Plaintiff would not struggle to

9    complete challenging tasks, perform work consistently, or interact with coworkers and

10   supervisors—all of which serve as workplace stressors.  The ALJ did not err in making this

11   assessment.

12          Plaintiff argues the ALJ erred in rejecting Dr. Gibson's opinion on the ground that Dr.

13   Gibson saw Plaintiff on only one occasion and reviewed no treatment notes, alleging a medical

14   source providing a "one-time exam" is not in itself a valid reason to reject an opinion.  Dkt. 8 at

15   11 (citing 20 C.F.R. § 404.1520c(b) (providing that the ALJ will determine a claimant's capacity

16   to work based on all medical opinions in the record)).  Finally, Plaintiff contends that the ALJ

17   erred in rejecting Dr. Gibson's opinion for failing to articulate a specific level of vocational

18   restriction, arguing Dr. Gibson's determination that Plaintiff would have difficulty maintaining

19   attendance is a concrete limitation.  *Id.* at 13.  But even assuming both findings were in error, the

20   errors were harmless, as the ALJ provided sufficient other reasons supported by substantial

21   evidence for discrediting Dr. Gibson's opinion.  *See Molina*, 674 F.3d at 1115.

22         / / /

23         / / /

1

## CONCLUSION

2      For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and

3 this case is **DISMISSED** with prejudice.

4      Dated this 3rd day of October, 2023.

5

6

7      S. KATE VAUGHAN
       United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 14